## Case No. 5,016.

### FOXALL v. McKENNEY et al.

[3 Cranch, C. C. 206.] [1]

Circuit Court, District of Columbia. Dec. Term, 1827.

Before CRANCH, Chief Judge, and MORSELL, Circuit Judge.

CRANCH, Chief Judge. The third bill, namely, Foxall v. McKenney et al., presents three questions: 1st. Who is entitled to the coffee, wine, &c., laid in by Mr. Foxall for household consumption? 2d. Are the trustees entitled to the use of the servants employed exclusively in the bakehouse? 3d. Is the plaintiff, Mrs. Foxall, entitled to be repaid by the defendants her travelling expenses from England to Georgetown?

1. As to the coffee, wine, &c. By the marriage settlement she was to have, for life, the dwelling-house and appurtenances in Georgetown, his "household goods, implements, and utensils of household, china, linen, family carriage, and pair of horses," then (4th November, 1816) in his dwelling-house in Georgetown; and the trustees were

[1] [Reported by Hon. William Cranch, Chief Judge.]

to hold the same in trust; to permit Mrs. Foxall "to occupy and enjoy" the dwelling-house and appurtenances; and "to hold, use, and enjoy the said household furniture, implements, and utensils of household, china, linen, carriage, and horses, for and during the term of her natural life, if she shall so long continue to reside in the said dwelling house, to and for her own sole and separate use and benefit;" and after her decease, or ceasing to reside therein, upon trust for Mrs. Foxall's executors, administrators, and assigns. By the will, after confirming the marriage settlement, he bequeathed to his wife $500, as a temporary "provision for her support, until the enjoyment of the provisions of the settlement should accrue to her." He also gives her, "for her own use absolutely," certain plate in the house at the time of his death. He also gives her the use of all his servants, during the remainder of their time of servitude. He also gives her a right to select either his town or country residence, "or to continue in the occupation and enjoyment of both, the same as they had been occupied and enjoyed by himself;" his "desire being to promote the personal comfort of his wife," and that the occupation by her, of both residences, should be as his had been. He declares that his book-case, and books therein, shall be considered as forming a part of the household furniture, limited to her by the settlement; "and if she shall choose to continue the occupation of both residences," he gives and bequeathes to her all his "furniture, and other household effects, in both residences, not included in said settlement, to be held, used, and enjoyed by her in the same manner, and upon the same terms, and for the same time, as the furniture and other household effects included in the said settlement;" but if she shall choose Spring-Hill, (the summer residence,) instead of the house in town, he then gives her power "to take and remove such part of his furniture and other household effects in his town-house, and carry the same with her to Spring-Hill, to be held and enjoyed by her in the same manner, in every respect, as the furniture and other household goods in his said dwelling-house; and as to such part thereof as she should not remove to Spring-Hill." he directs that the same shall sink into and form part of the "residuum of his estate." At the time of Mr. Foxall's death, there remained in his dwelling-house in Georgetown a small quantity of coffee in a bag, and some wine in bottles, and brandy in a cask, the whole value of which was $458.48, after deducting $20.06¼ for the bottles, &c., which coffee, wine, and brandy had been laid in by Mr. Foxall for the current use and consumption of himself and family, and not for sale. Mrs. Foxall, after her return from England, where her husband died in December, 1823, having determined to continue the occupation of both residences, (viz., the house in town and Spring-Hill,) took possession of

the same and all the household effects in both, including the coffee, wine, and brandy; and the question now is, whether these family stores, or provisions, passed to her under the bequest of "all his furniture and other household effects in both residences, not included in the settlement; to be held, used, and enjoyed by her, in the same manner, and upon the same terms, and for the same time, as the furniture and other household effects included in the said settlement," that is, "for her sole and separate use and benefit," provided she continued to reside in either of the said houses, and for life if she should so long continue to reside therein. The intention of the testator is the ruling principle of construction in expounding a will. If the words are, in their usual import, extensive enough to carry the thing in question, but may be so construed as not to carry it, the intention of the testator must be sought by a comprehensive view of the whole will, and the circumstances in which the testator was, at the time of making it.

The words, "goods and chattels," are the most comprehensive terms of description for passing personal property by will; yet they may be restricted by the context. Thus in Crichton v. Symes, 3 Atk. 61, the words "all my goods, wearing apparel of what nature and kind soever, except my gold watch," were restricted to household goods and furniture, there having been a legacy of £50 given by the same will to another legatee; which showed the intention of the testator not to give every thing to the first legatee; it appearing also that the household goods, furniture, wearing apparel, and watch, together with the £50, constituted the whole personal estate, except about £16. And in Woolcomb v. Woolcomb, 3 P. Wms. 112, one devised to his wife "all his household goods, and other goods, plate, and stock, within doors and without," and bequeathed the residue of his personal estate to J. S. It was contended that the words "all other goods," carried the whole personal estate; but the lord chancellor was of opinion that such a construction would make void the bequest of the residuum; and that it seemed reasonable that the words "other goods" should be understood to signify things of the like nature with household goods, "to the end the whole will might have its effect; and consequently that the money, cash, and bonds should not, in this case, pass by the word 'goods,' but should go to the residuary legatee." In the case of Pratt v. Jackson, 2 P. Wms. 302, the words "household goods, utensils, and household stuff," in a marriage settlement, were held, by the house of lords, upon appeal, to carry only such as were in the dwelling-house of the husband, who lived in London, and not the beds, &c. in a marine hospital in Portsmouth, where he provided for sick and disabled seamen, under a contract with the government; these beds, &c.

being considered rather as stock in trade than household goods.

These cases, and many others which might be cited, show that words, which are, of themselves, large enough to include the thing in question, may, by their associates, or by the context, or other circumstances, be so far contracted as to exclude that thing; and they are all examples of the rule that "the intention of the testator is to govern the construction of the will."

In the present case, if the coffee, wine, and brandy were bequeathed to Mrs. Foxall, it must be because they are included in the expression "household effects." These words do not seem to comprehend more than the words "household goods;" and they are used by the testator himself as equivalent terms; and in the marriage articles he has repeatedly used the words "household furniture" as equivalent to "household goods." By his will, he declares that his book-case and books therein shall be considered "as forming a part of the household furniture which is limited to" his wife by the settlement; and if she shall choose to continue the occupation of both residences, he gives her "all his furniture and other household effects, in both his said residences, not included in the settlement; to be held, used, and enjoyed by her, in the same manner, &c. as the said furniture and other household effects, included in said settlement." The indiscriminate use which he makes of the expressions "household furniture," "household goods," and "household effects," seems clearly to prove that he considered them synonymous; and by limiting his wife to the use of the "household effects" bequeathed, in the same manner, upon the same terms, and for the same time, as the "household effects" included in the settlement; it is strongly to be inferred that they were to be effects of the same kind. It had been decided, nearly a century before the date of this will, by Lord Chancellor Talbot, in the case of Slanning v. Style, 3 P. Wms. 334, 335, that malt, hops, beer, and ale, "which are victuals, and whose use is in their consumption, cannot, in their common, natural sense, be taken to be household goods, and pass under that denomination." And the case is much stronger where the use of the household effects is limited to the life of the legatee. In a still earlier case (Mich. T. 1729) Trafford v. Berrige, 1 Eq. Cas. Abr. 201, case 14, it was holden that where a man devised to his niece "all his goods, chattels, household stuff, furniture, and other things, which then were or should be in his house at the time of his death, and some time after died, leaving about £265 in ready money in the house, this ready money did not pass; for, by the words 'other things,' shall be intended things of like nature and species with those before mentioned." It is evident, by the various clauses of the will which have been cited, that it was the intention of the testator to

give Mrs. Foxall those things only, of which there could be a use for life, and which might remain in specie at her death; and that such as would be consumed in their use were not in his contemplation; and therefore he could not intend to give them. And, although from the general tenor of the will, and the solicitude it manifests to provide for the personal comfort of his wife, we may suppose that if these household stores of coffee, wine, &c. had been the subject of his thoughts, he would probably have given them to her; yet as it seems manifest that he did not think of them, and that he has not, in his bequest, used such expressions as, according to settled rules of construction of wills, will comprehend them, I am compelled to say that they did not pass to her by the will. I am also of opinion that the bag, the bottles, and the cask, go with the coffee, wine, and brandy, as incidents thereto.

2. The 2d question arising upon this bill, is, whether the trustees are entitled to the use of the servants who had been exclusively employed in the bakehouse in the lifetime of the testator. The clause of the will under which Mrs. Foxall claims them is in these words: "Also I give to her the use of all my servants during the remainder of their time of servitude." After this and several other specific bequests and devises, and subject thereto, he bequeaths and devises, to his trustees, whom he also appoints his executors, all his property of every kind, with the most ample powers to manage the same. Then comes the following clause, under which the trustees claim the use of the bakehouse servants: "And whereas I am now carrying on the baking business, in Georgetown, under the care and superintendence of my said son-in-law, Samuel McKenney, who accounts to me," &c., "now I do hereby declare my mind and intention to be that my said trustees do and shall, in their discretion, continue to carry on the said business after my death, for such time as they shall think it proper and prudent; and to use and employ my property therein, under the care and superintendence of the said Samuel McKenney, in the same manner as the same is now carried on by me and superintended by him," &c. &c. The servants in the bakehouse were literally Mr. Foxall's servants, and had a limited time to serve; and the words of the bequest to Mrs. Foxall are extensive enough to comprehend them, and she is entitled to the use of them, unless the general expression "all my servants" can be limited by the intention of the testator as discovered by a consideration of the other parts of the will. The 1st clause of the will confirms the marriage settlement; the 2d gives his wife $500 in addition to the settlement; the 3d gives her certain articles of plate; the 4th gives her the use of the servants; the 5th gives her the use of both his residences. These provisions seem all to be made in pari materia, and to have had the same object—the personal comfort of Mrs. Foxall in the residences she was to continue to occupy as he had done. They all relate to the household establishment, and to the small farm at Spring-Hill, which she was to occupy as a "retreat merely." For these purposes the bakehouse servants had not been used, and seem not to have been contemplated by the testator in the bequest, to his wife, of the use of his servants. I think therefore that she is not entitled to the use of the bakehouse servants.

3. The 3d question, arising upon this bill, is, whether Mrs. Foxall is entitled to be repaid, by the defendants, her travelling expenses from England to Georgetown. I see no part of the will which justifies such a claim; and therefore am of opinion that it cannot be allowed.